MAGDALENA BREMILLER, Respondent, *v.* BUFFALO, ROCHESTER AND PITTSBURGH RAILROAD COMPANY, Appellant.

*Contributory negligence — failure to look for an approaching train.*

Upon the trial of an action brought to recover damages resulting from injuries caused, as alleged, by the negligence of the defendant, a steam railroad corporation, it appeared that the plaintiff lived near a highway which ran easterly and westerly and crossed the defendant's tracks, which ran north and south; that eight feet west of the defendant's tracks there was a switch track upon which one or two box cars were standing at the time of the accident; that, after passing such cars, a person approaching from the west could look to the south for a distance of about 450 feet; that the plaintiff lived near the tracks and was familiar with the neighborhood ; that the day was stormy and snow was falling. The plaintiff approached from the west, crossing the switch track and the intervening space, and as she reached the westerly rail of the main track she was struck by a train approaching from the south and received the injuries for which she sought to recover damages. She did not testify upon her direct examination that she looked to the south as she approached the crossing, and it appeared that in spite of the falling snow the train could be seen for a distance of over 200 feet.

*Held,* that the plaintiff had not shown herself to be free from contributory negligence, and that a judgment in her favor must be reversed.

WARD, J., dissenting.

APPEAL by the defendant, the Buffalo, Rochester and Pittsburgh Railroad Company, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of Cattaraugus on the 4th day of March, 1894, upon the verdict of a jury rendered after a trial at the Cattaraugus Circuit, and also from an order entered in said clerk's office on the 6th day of August, 1894, denying the defendant's motion for a new trial made upon the minutes.

*Henry G. Danforth,* for the appellant.

*W. G. Laidlaw,* for the respondent.

LEWIS, J.:

The plaintiff while attempting to cross the defendant's tracks near the station at Riceville, Cattaraugus county, was struck and injured by one of the defendant's locomotives, and she brought this action to recover the damages she sustained. There was a verdict for $450.

The defendant's road at the place of the accident runs north and south, and crosses a highway which runs in an easterly and westerly direction. Four hundred and fifty feet south of this crossing was a curve and cut in defendant's road which obscured trains. Up to that point trains were visible to a person standing upon the highway crossing.

There was a switch track westerly of the main track extending from the highway southerly, the easterly rail of which was eight feet distant from the westerly rail of the main track. The highway crossed the railroad tracks at such an angle that along the highway the distance between these rails was about fourteen feet. The station was on the easterly side of the railroad tracks and southerly of the highway.

The plaintiff resided in a house on the westerly side of the railroad lands and south of the highway. It was sixty-five feet from the door of her house to the center of the switch track. The plaintiff left her house on the 27th of February, 1892, to go to the

station to take the train going north, due at the station at nine-fifty A. M.

The ground was covered with snow about one foot in depth. Plaintiff passed out into the highway and walked up a beaten track across the switch track toward the depot, and just as she reached the main track and had put one of her feet over the westerly rail, she discovered the train approaching from the south. She stepped back, but was not able to get entirely out of the way of the train, and was struck by the end of the cross beam of the engine and received the injuries complained of. One or two box cars were standing upon the switch track south of the highway; the northerly end of one of the cars was very near the beaten track in which plaintiff walked. One of plaintiff's witnesses testified that a team driven past the car would have come within one foot of it. The morning was stormy. Some of the witnesses described it as a very severe storm, the wind blowing in every direction. It was snowing   This was a flag station; trains stopped at it only when signaled so to do.

The train in question had not been signaled to stop, and so passed the station without stopping, and at a speed of from twelve to twenty-five miles an hour.

There was much conflict in the evidence as to whether the approach of the train was announced by the ringing of the bell and the sounding of the whistle. We assume that the defendant's negligence caused the plaintiff's injuries.

The plaintiff, we think, failed to show herself free from negligence contributing to her injuries.

It was shown by uncontradicted evidence that there was at the time an unobstructed view to the south along the railroad track after passing the freight cars mentioned standing upon the switch track, for the distance of from 440 to 450 feet, and that the plaintiff could have seen the train at any time after it left the curve and cut, had she looked in that direction after she passed the cars upon the switch track unless her vision was in some way obscured.

Upon her direct examination the plaintiff failed to state that she looked in the direction the train was approaching after she passed the car. She said that she looked for the train as she left her house, and looked again when she saw the cars on the switch track; but·

upon her cross-examination by the defendant's counsel she did testify that she looked for the train after she passed the car, and did not see it until she had put one of her feet over the west rail of the main track.

Neither the plaintiff nor any other witness testified that the snow was falling so fast as to prevent her from seeing the train. The engineer and fireman testified that they were able to see the platform of the station as they approached it for the distance of 275 feet.

Herman Kessler, one of the defendant's sectionmen, was on the main track at the crossing shoveling snow and saw the train when it arrived within 200 or 300 feet of him. The plaintiff's husband testified that he stood in the doorway of his dwelling when plaintiff left her house.

He said: "I see her when she went out of the door, and she went up and went across some cars, and some cars stood there, and went across them and went on the railroad; and I saw her when she got throwed off there, and she was right-under the cars." Again he said: "I looked at her all the time; did not take my eye off her till she got struck; I saw her struck."

The plaintiff testified that as she left the house she saw Kessler shoveling snow by the cars, so that she was able, for the distance of sixty-five feet, to distinguish Mr. Kessler and see the shovel in his hands.

In the light of this evidence it cannot, with any propriety, be claimed that the falling snow prevented the plaintiff from seeing the train.

Kessler was standing at the end of the cars as plaintiff passed, but she did not see him. In trying to account for her not seeing him as she passed him she said: "I did not look at him when I passed by the cars; I looked just where I want to go; when I came out of my house he was in there by them cars around with his shovel; I cannot tell you if he was in the public road; he was doing something with his shovel by them cars that stood there; I saw him when I went out of the house; I did not look more; I did not look what he was doing there, not at all; I must have passed him when I went down to the railroad, because he works there by them cars, but I did not look at him as I was bundled up, you know." Again she said: "My head was all bundled up."

The plaintiff was entirely familiar with the running of the trains and with all the surroundings. She had lived for years near the station. She knew that the train was due and was liable to arrive at any moment, for she was on her way to the depot to take it. She was, under the circumstances, called upon to be exceedingly vigilant in the use of her eyes as she knew the wind was blowing, and that it might prevent her from hearing the train. She walked from twelve to fourteen feet after passing the cars upon the switch before she reached the main track, and, had she looked in the direction of the approaching train during that time she would have seen it, unless the manner in which her head was dressed prevented it. Plaintiff was the only witness who testified that she looked in the direction of the train after she passed the cars. Her husband, who saw and carefully watched her from the time she left the house until she was struck by the engine, did not testify that he saw her look for the train.

The plaintiff gave her testimony two years and more after the accident, and very likely believed she looked for the train after she passed the cars. The burden was upon plaintiff to show herself free from negligence contributing to her injuries by a preponderance of evidence; this, we think, she failed to do.

The judgment and order appealed from should be reversed and a new trial granted, costs to abide the event.

BRADLEY and DAVY, JJ., concurred; WARD, J., dissented.

Judgment and order reversed and new trial granted, costs to abide the event.